Harold B. McGUFFEY, as Kentucky Insurance Commissioner, and Citizens Security Life Insurance Company, Movants,

v.

WESTERN PIONEER LIFE INSURANCE COMPANY, Respondent.

Court of Appeals of Kentucky.

March 20, 1974.

Edward L. Fossett, Dept. of Ins., Frankfort, for movant McGuffey.

Bert T. Combs, Richard W. Iler, H. Alexander Campbell, Tarrant, Combs, Blackwell & Bullitt, Louisville, for movant Citizens Security Life Ins. Co.

Edward F. Prichard, Jr., Frankfort, Phillip E. Allen, Louisville, Morton J. Holbrook, Sandidge, Holbrook & Craig, P. S. C., Owensboro, for respondent.

CULLEN, Commissioner.

On February 27, 1974 the Commissioner of Insurance of Kentucky issued an order embracing these provisions:

> " * * * that Western Pioneer Life Insurance Company and its affiliates, including all officers and directors of Western Pioneer Life Insurance Company and all officers and directors of the affiliates of Western Pioneer Life Insurance Company, are not to acquire control [of Citizens Security Life Insurance Company] as that term is defined in KRS 304.37–010, unless and until such change of control is approved by the Commissioner, pursuant to the procedure set forth in KRS 304.24–410."

Thereafter Western Pioneer Life Insurance Company brought suit in the Franklin Circuit Court against the Commissioner of Insurance and Citizens Security Life Insurance Company seeking declaratory and injunctive relief. In that suit the circuit court issued the following temporary injunction:

> "The defendants are hereby enjoined and restrained, during the pendency of this action and subject to the further orders of this court, from enforcing and seeking to enforce the order issued by defendant, McGuffey, on February 27,

1974, insofar as said order purports to determine and adjudicate that the solicitation of proxies by plaintiff, its officers and/or directors, its affiliates and/or their officers and/or directors constitutes a proposal to acquire the controlling capital stock of defendant, Citizens Security Life Insurance Company, and insofar as said order purports or seeks to prohibit plaintiff, its officers and/or directors, its affiliates, and/or their officers and/or directors, from soliciting such proxies pursuant to and in compliance with regulation I–26.01."

We have before us motions by the Commissioner of Insurance and Citizens Security, under CR 65.07, to dissolve the injunction.

The primary statute mentioned in the Commissioner's order, KRS 304.24–410, provides in pertinent part as follows:

"(1) Any person proposing to acquire the controlling capital stock of any domestic stock insurer and thereby to change the control of the insurer, other than through merger or consolidation or affiliation as provided for in this subtitle, shall first apply to the commissioner in writing for approval of such proposed change of control. * * *"

Implementing that statute, there is a regulation of the Commissioner of Insurance, I 24.03, which provides:

"The acquisition by or for the benefit of any person of 15 percent or more of the outstanding voting capital stock of a domestic insurer shall be presumed to be for the purpose, but not necessarily to the exclusion of other purposes, of changing the control of such insurer, and shall subject such person to the requirement of first making written application to the Commissioner for approval thereof."

In its injunction order the circuit court found that Western Pioneer owns 14.8 percent of the capital stock of Citizens Security, and that Western Pioneer has joined with other stockholders and directors of Citizens Security in an agreement to solicit proxies for the election of directors of Citizens Security. The court's conclusion of law was that the Commissioner of Insurance did not have authority under those facts to forbid the proxy solicitation.

The background of this case is as hereinafter stated.

Citizens Security, a Kentucky life insurance company, has 1,300,000 publicly held shares of its capital stock. It had thirteen directors, four of whom were Wells T. Lovett, Raymond L. Mitchell, S. Rayburn Watkins and Robert W. White. Prior to the events hereinafter mentioned these four men owned 240,000 shares of the stock of Citizens Security, which was more than 15 percent of the total outstanding stock. Western Pioneer owned 56,609 shares. The four men above named were not, however, in actual control of Citizens Security. The control was in a group of eight of the other nine directors.

Western Pioneer Life Insurance Company is also a Kentucky life insurance company, affiliated with a number of other corporations, some in the insurance business and others not. "Western Pioneer" is used hereinafter in this opinion to describe not only this company but also any of its affiliates.

Beginning in September 1973, Western Pioneer or one or another of its affiliates made various proposals to buy more than 15 percent of the capital stock of Citizens Security. Applications for approval were made to the Commissioner of Insurance, but in several instances the applications were withdrawn after a hearing was scheduled. One of the applications was for approval of an agreement under which Western Pioneer was to purchase 240,000 shares of the stock of Citizens Security from Lovett, Mitchell, Watkins and White. That application was denied, without a hearing, on the ground that the purchase price per share was far in excess of the

fair value, which rendered the purchase in violation of KRS 304.7–030.

Thereafter, Western Pioneer entered into an agreement with Lovett, Mitchell, Watkins and White to buy 140,000 shares of Citizens Security (which amount, added to the shares already owned by Western Pioneer, would give the latter a total ownership of 14.8 percent). The agreement recited that Western Pioneer desired to purchase the 140,000 shares "for the purpose of facilitating a possible merger of Citizens Security and Western Pioneer." The agreement called for payment of the purchase price in two installments, the second one to be made on February 22, 1974. On that day Western Pioneer and the sellers entered into a "Shareholders' Protective Agreement" under which the parties agreed to cooperate in soliciting proxies for the election of a designated slate of directors of Citizens Security.

The agreement for purchase of the 140,000 shares, and the shareholders' protective agreement, were not submitted to the Commissioner of Insurance for approval. However, two days after the agreement was made for the purchase of the 140,000 shares, Western Pioneer submitted to the Commissioner for approval a proposal to make a cash tender offer to all shareholders of Citizens Security to purchase 200,000 shares. A hearing was scheduled on that application but on February 25, 1974, the application was withdrawn. On the same day, following the withdrawal, the Commissioner entered the order that is involved in this litigation.

The contention of Western Pioneer is that the statute requiring approval of an acquisition of "the controlling capital stock" of an insurer governs only an acquisition of *ownership* of stock—not of a mere proxy. Western Pioneer concedes that it is trying to gain control of Citizens Security (as evidenced by the history of its acquisition proposals and by the recitation in the purchase agreement for the 140,000 shares that the purchase was "for the pur-pose of facilitating a possible merger"), but it argues that the statute does not give the Commissioner of Insurance power of approval over an acquisition of control of a company other than through the acquisition of title to the controlling stock. Western Pioneer maintains, therefore, that the commissioner has no power under the statute to forbid solicitation of proxies.

We agree that the statute governs only the acquisition of actual or virtual ownership of the controlling stock and that the commissioner has no power to forbid solicitation of proxies as an independent proposition. However, that does not supply the answer to the case.

If what constituted the controlling stock of any company were a matter capable of exact predetermination by a formula there would be no problem, because such a formula would specify the circumstances in which application for advance approval of an acquisition was required to be made. Steps to take control of a company then could effectively be stopped simply by denial of approval of the application. But there is no formula for such predetermination, so it is entirely possible for an acquisition of stock to be effected in circumstances in which no prior application for approval was made because it was not predeterminable that the acquisition was in fact of the controlling stock. In that situation, when the attention of the Commissioner of Insurance is brought to the fact of acquisition and to circumstances accompanying it such as to indicate a genuine question of whether the stock acquired was the controlling stock, the only effective way in which a takeover of control can be stopped, pending a determination of that question (and the entry of an order disapproving the acquisition), would be by an order forbidding any steps to implement the taking of control, such as by solicitation of proxies, until the question is determined.

██ So, we think that an order forbidding solicitation of proxies can be made by

the Commissioner of Insurance pending determination of the question of whether an effected acquisition of stock (not submitted for advance approval) was in fact an acquisition of the controlling stock.

■ Of course we are not overlooking the regulation hereinbefore quoted which presumes that any acquisition of 15 percent or more of the stock is an acquisition of the controlling stock. We do not consider the regulation as constituting a *formula* for predetermination of what constitutes the controlling stock. We think it merely establishes a rule of convenience for determining what acquisitions must be submitted for *advance* approval. The regulation could not, and does not, undertake to prescribe that an acquisition of less than 15 percent cannot be found to be one of the controlling stock.

■ What, then is to be considered an acquisition of controlling stock? We think it simply is any acquisition that probably will furnish the basis for the acquirer, with his particular intents and capabilities, to take control. Obviously, it can be less than 51 percent, and how much less will depend on the capabilities of the particular acquirer.[1] This concept is in effect the same conceived by the United States Court of Appeals, Second Circuit, in Willheim v. Murchison, 342 F.2d 33 (1965), as to a federal law dealing with the sale of a "controlling block" of stock. The court there said (342 F.2d at 39):

"* * * However, in construing the variant term 'controlling block,' the emphasis must be on transferable elements of power and due attention must be given to the precise regulatory provision invoked. Obviously, management will give an attentive hearing to any sizeable

stockholder and a single share may prove decisive in an even contest; but where the amount is less than 25% and has no other indicia of control, it is not a 'controlling block' unless ownership itself presages victory. * * *"

■ It is our opinion that the circumstances preceding and following the acquisition by Western Pioneer of the 140,000 shares were such as to indicate the existence of a genuine issue as to whether the acquisition was one of the controlling stock. We think that there was a basis for inquiry as to whether the ownership of the 140,000 would presage victory, and into the "indicia of control" suggested by the circumstances. Therefore, the Commissioner of Insurance was warranted in initiating a proceeding to determine the factual issue, and in putting a stop order on steps to implement a takeover of control of Citizens Security, pending determination of the issue. We construe the commissioner's order of February 27, 1974, as doing that.

We consider that the determination of the issue above mentioned is one in which the circuit court should "route the threshold decision * * * to the agency charged with primary responsibility for governmental supervision or control of the particular industry or activity involved." See Preston v. Meigs, Ky., 464 S.W.2d 271. To what extent the jurisdiction of the circuit court may subsequently be exercised will depend upon future developments.

On the basis of the foregoing considerations, it is ordered that the temporary injunction granted by the circuit court be and it is dissolved.

All concur except PALMORE, J., who did not sit.

1. Cf. Gottesman v. General Motors Corporation, D.C., 279 F.Supp. 361.